**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Carl J. Brown

    v.                                            Civil No. 19-cv-422-LM
                                                       Opinion NO. 2020 DNH 053

Andrew M. Saul, Commissioner
Social Security Administration

**O R D E R**

Carl J. Brown seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for disability insurance benefits under Title II. In support, he contends that the Administrative Law Judge ("ALJ") erred in weighing the medical opinion evidence and in evaluating his hearing testimony which led to an erroneous residual functional capacity assessment. The Commissioner moves to affirm.

**Standard of Review**

Judicial review of the final decision of the Commissioner in a social security case determines "whether the final decision is supported by substantial evidence and whether the correct legal standard was used." Coskery v. Berryhill, 892 F.3d 1, 3 (1st Cir. 2018). The court defers to the ALJ's factual findings if they are supported by substantial evidence. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more than a mere scintilla" and means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154. The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

## Background[1]

Carl Brown was forty-seven years old in October of 2015, when he alleges his disability began. He previously worked as a crew laborer, logger, operating engineer, and truck driver. He was fired from his last job, construction work, on October 8, 2015, because of a dispute with his employer.

Brown applied for social security disability insurance benefits on November 12, 2015. He alleges that his disability

---

[1] Brown provides few facts pertaining to his medical history, treatment, diagnoses, and care. See LR 9.1(c). Instead, Brown's factual statement provides the procedural history of the administrative proceedings and summarizes findings in the ALJ's decision. Brown also provided some information from the opinions of Drs. MacDonald, Tung, and Imbrie, but no information from his medical records about his treatment or diagnoses by those doctors. The Commissioner provided limited information from the medical records in his supplement to Brown's factual statement.

2

began on October 8, 2015, which is the date he was fired from his job. Brown alleges disability caused by ischemic cardiomyopathy, diabetes, ulcerative colitis, colostomy, nerve damage in his feet, and carpal tunnel in his right hand.

Brown had a consultative physical examination done by Dr. Peter C. Loeser in January of 2016. Dr. Loeser diagnosed non-ischemic cardiomyopathy with a reported EF of 10, poorly controlled diabetes, and morbid obesity.[2] He provided other normal findings except for trace-pitting edema in the lower legs and decreased fine-touch sensation in the big toe of Brown's right foot.

Dr. Sandell, a state agency physician, reviewed Brown's medical records and his functional report, and provided a functional capacity opinion on January 23, 2016. She found that Brown was able to occasionally lift and carry twenty pounds and to frequently lift and carry ten pounds. He could stand, sit, or walk for six hours in an eight-hour work day. He could occasionally climb ramps and stairs and occasionally do postural

---

[2] EF is an abbreviation for ejection fraction, a measure of how much blood is being pumped from the left ventricle with each contraction of the heart. A normal ejection fraction is about 55 to 65 percent. MedlinePlus Medical Encyclopedia, heart failure-tests, https://medlineplus.gov/ency/patientinstructions/000366.htm (Mar. 30, 2020); Rashid v. Saul, 2020 WL 1274185, at *3, n.4 (D. Mass. Mar. 17, 2020). Brown's EF of 10 percent was from a test in November of 2014, before Brown's onset date and while he was still working.

activities.  She also found that Brown should avoid concentrated exposure to extreme cold.

As part of his cardiovascular care, Brown had echocardiograms in April and October of 2016, which showed an EF of 35 percent.  Dr. Hugh MacDonald, Brown's primary care physician, examined him on December 2, 2016, and January 13, 2017.  In his examination notes for the December 2 visit, Dr. MacDonald wrote that Brown was seen for a hospital follow-up after a hospitalization of several days duration and for follow-up of congestive heart failure.  Dr. MacDonald recorded "normal" findings for Brown's abdominal, cardiovascular, and respiratory system examinations.

Brown was seen again on January 13, 2017, for follow up of congestive heart failure.  Dr. MacDonald noted Brown's history of systolic heart failure, ischemic cardiomyopathy, diabetes type 2, and an EF of 35 percent.  He recorded findings of "normal" for Brown's respiratory, cardiovascular, and extremity examinations.

Dr. MacDonald provided a "Physical Impairment Medical Source Statement" dated February 3, 2017.  He wrote that he had treated Brown since January of 2009, and listed his diagnoses as cardiomyopathy "requiring ICD," diabetes, congestive heart failure, anemia, hypertension, ulcerative colitis, chronic kidney disease, and depression.  Dr. MacDonald found that Brown

4

could not tolerate any work stress and could not do work at even a sedentary exertional level.

From November of 2012 through January of 2017, Brown was treated by Dr. Paul Tung, an endocrinologist, for diabetes mellitus type 2.[3] In February of 2017, Dr. Tung completed a "Diabetes Mellitus Medical Source Statement" in which he checked boxes to show that Brown could never lift ten pounds or more, could walk or stand for less than two hours in a work day, and would need other accommodations for symptoms and pain. Dr. Tung also indicated that the limitations he found had existed since October 8, 2015.

Dr. Gregory Imbrie, who was Brown's cardiologist in March of 2017, had been treating him for four months at that time. Dr. Imbrie noted that an echocardiogram done on February 16, 2017, which showed an EF of 20 percent, a severely enlarged left ventricle, and other findings that were the basis of his opinion about Brown's impairment.[4] Dr. Imbrie diagnosed a New York Heart Association functional classification of III. That classification indicates marked limitation in activity because of symptoms and a patient who is comfortable only when resting.

---

[3] Although Dr. Tung's treatment records included in the Administrative Record begin in October of 2014, Dr. Tung wrote on his "Diabetes Mellitus Medical Source Statement" that he had treated Brown since November 21, 2012.

[4] Dr. Imbrie's handwriting is difficult to read.

5

See www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure.  Dr. Imbrie found that Brown could not tolerate work stress and that he was limited to work at a sedentary exertional level except that his ability to sit, stand, and walk was limited to less than eight hours and he had other limitations in his ability to work.  Dr. Imbrie indicated that Brown's impairments had existed since October 8, 2015.

A hearing was held before an ALJ who then became unavailable before issuing a decision.  Another ALJ held a hearing which was continued to allow additional preparation by the medical expert, Dr. James W. Todd.  The final hearing was held on June 11, 2018.  Brown, Dr. Todd, and a vocational expert testified at the hearing.

Dr. Todd, who is board certified in cardiology and internal medicine, noted Brown's diagnoses of congestive heart failure, the levels of his condition over time, and the functional capacity assessments by others that were in Brown's record.  Dr. Todd testified that Brown met a listed impairment in the spring of 2017.  During the relevant period, except for the spring of 2017, Dr. Todd found that Brown would have had a residual functional capacity to do light work.

The ALJ posed a hypothetical question to the vocational expert of a forty-seven-year-old man who can lift twenty pounds occasionally and ten pounds frequently and should not climb

because of his weight and in a second hypothetical question that limited his postural activities. The vocational expert responded, listing the jobs of package sorter, housekeeper, and bench assembler as representative jobs. When Brown's attorney added other limitations, the vocational expert testified those limitations would preclude all jobs.

The ALJ issued a decision on July 17, 2018. He found that Brown had severe impairments due to cardiomyopathy and morbid obesity. The ALJ further found that Brown was disabled as of February 16, 2017, when his cardiomyopathy met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02, and continued to be disabled through the date of the decision. Prior to that date, however, the ALJ found that Brown had a residual functional capacity to do light work, except that he could not climb ladders, ropes, or scaffolds. Based on that functional capacity assessment, the ALJ found that Brown could do the jobs the vocational expert had identified during the hearing. As a result, the ALJ found that Brown was not disabled until February 16, 2017.

The Appeals Council denied Brown's request for review, making the ALJ's decision the Commissioner's final decision.

**Discussion**

In support of his motion to reverse the Commissioner's decision, Brown contends that the ALJ erred in giving great weight to the opinions of Drs. Todd, Loeser, and Sandell, while giving little weight to the opinions of his treating doctors, Drs. MacDonald, Tung, and Imbrie. He also contends that the ALJ erred in evaluating Brown's testimony about his symptoms and limitations. Those errors, Brown argues, caused the ALJ to improperly assess his residual functional capacity. The Commissioner moves to affirm.

A disability determination proceeds through a five-step sequential analysis. 20 C.F.R. § 404.1520. The claimant bears the burden through the first four steps of proving that his impairments make him disabled from working. Purdy, 887 F.3d at 9. At the fifth step, the Commissioner has the burden of showing that jobs exist which the claimant can do. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). If no finding of disability is made at the third step, the ALJ assesses the claimant's residual functional capacity before addressing steps four and five. 20 C.F.R. § 404.1520(e).

A. Medical Opinions

An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R.

§ 404.1527(b). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  § 404.1527(a)(1). The ALJ evaluates medical opinions based upon the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other factors including the understanding the source has of the social security system.  § 404.1527(c); see also Brunnell v. Commissioner of Social Security, 18-cv-569-LM, 2019 WL 4201068, at *4 (D.N.H. Sept. 5, 2019).

### 1. Dr. MacDonald

Dr. MacDonald is Brown's treating primary care doctor. Based on his functional capacity assessment, Dr. MacDonald found that Brown was not capable of working. The ALJ gave Dr. MacDonald's opinion that Brown could not work no weight, because that decision is reserved for the Commissioner.

The ALJ gave Dr. MacDonald's functional capacity findings little weight because they were inconsistent with his own

9

treatment notes and other medical evidence in the record.  The
ALJ also noted that although Dr. MacDonald indicated that Brown
had had the same impairments since the alleged onset date,
October 8, 2015, he did not indicate whether Brown's functioning
remained the same over that period.  The ALJ further noted that
Dr. MacDonald's opinion was provided on a check-box form with
little explanation.

    Brown's challenges to the ALJ's analysis lack merit.
Contrary to Brown's argument, the ALJ did not say it was unclear
when Dr. MacDonald found Brown's <u>impairments</u> had begun.
Instead, the ALJ noted that Dr. MacDonald did not say whether
Brown's <u>limitations</u> due to those impairments, functional
limitations, had remained the same over the whole period
beginning on October 8, 2015.[5]  Because Brown was working full
time at a construction job until October 8 when he was fired, a
finding of an inability to work at that time would be
inconsistent with the record.  The ALJ explained that the
record, including Dr. MacDonald's treatment notes, showed that
Brown's condition was mostly stable until the exacerbation of
his heart condition in February of 2017, with a short-term acute

---

[5] The ALJ also cited Dr. MacDonald's note on the medical source statement, made on April 30, 2018, that said Brown's impairments were worsening.

10

exacerbation in the fall of 2016, when his condition improved with treatment.

Brown argues that the ALJ erred in focusing on his heart condition without considering his other diagnoses and symptoms as bases of Dr. MacDonald's opinion.[6] Although Dr. MacDonald identified other diagnoses in addition to cardiomyopathy and heart failure, he did not link any of his functional capacity findings to those diagnoses or particular symptoms. More specifically, Dr. MacDonald wrote that the reason Brown could not tolerate work stress at all was due to his cardiovascular condition. The findings that follow appear to be related to Brown's cardiovascular condition rather than to other diagnoses or symptoms. Brown has not shown which limitations he believes were based on diagnoses or symptoms other than his heart condition and related symptoms. Therefore, Brown has not shown an error in the ALJ's consideration of Dr. MacDonald's opinion.

### 2. Dr. Tung

Dr. Tung, Brown's treating endocrinologist, provided an opinion in February of 2017 that Brown could do work at the sedentary exertional level but would have to keep his legs elevated while sitting and change positions at will. The ALJ

---

[6] The ALJ found severe medically determinable impairments due to cardiomyopathy and morbid obesity.

11

found Dr. Tung's opinion unpersuasive because his treatment notes showed that Brown had peripheral neuropathy while he was working full time in a construction job before his alleged onset date and the notes did not show that Brown's condition worsened. Brown contends the ALJ's assessment was wrong because Dr. Tung limited his opinion to the period after his onset date and because the ALJ did not explain how the opinion was inconsistent with the medical record.

Dr. Tung actually said that Brown's impairments had existed since the onset date, October 8, 2015. Contrary to Brown's interpretation, Dr. Tung did not say Brown did not have peripheral neuropathy before the onset date or indicate that Brown's impairments worsened. Brown was working until October 8, as the ALJ points out. The ALJ cited Dr. Tung's records to show the inconsistency he describes. Further, Dr. Tung's treatment note on October 22, 2015, just after the onset date when Brown stopped working, states that Brown's foot pain had decreased and that he had no throbbing or numbness. Therefore, the ALJ properly assessed Dr. Tung's opinion based on the medical record.

### 3. Dr. Imbrie

Dr. Imbrie, Brown's cardiologist, began treating Brown in February of 2017, just before he provided his opinion. As a

result, he did not have the longitudinal view of Brown's condition that a treating doctor would have. Dr. Imbrie found that Brown lacked the capacity to work.

The ALJ gave the opinion less weight because it was not clear when the limitations Dr. Imbrie described had begun.[7] The ALJ explained that Brown had had a significant decline in his EF percent in February, when Imbrie began his treatment. The ALJ further explained that treatment notes and objective medical evidence prior to that time did not support a conclusion that the level of limitation Dr. Imbrie found had existed before February of 2017. The ALJ properly weighed Dr. Imbrie's opinion and explained his reasons for the weight given.

### 4. Dr. Todd

Dr. Todd testified at the hearing about Brown's residual functional capacity. Dr. Todd is board certified in cardiology and internal medicine. He found that Brown was capable of light work except for a period of a few months in the spring of 2017. The ALJ found that Dr. Todd's opinion was most persuasive and relied on it to assess Brown's residual functional capacity until February 16, 2017.

---

[7] Brown again argues that because Dr. Imbrie indicated that his impairments had existed since the onset date, there was no ambiguity in when his limitations began. As is explained above, Brown fails to grasp the distinction between impairments and limitations that the ALJ makes.

13

Brown objects to the weight given to Dr. Todd's opinion but the grounds are not clear. He says the ALJ erred in finding that the opinion was within Dr. Todd's area of expertise, cardiology, because Brown had other medical conditions. The ALJ, however, did not find that the other medical conditions, except morbid obesity, were severe medically determinable impairments. Brown notes that the hearing was continued to give Dr. Todd additional time to review the record but does not explain why that circumstance would undermine the weight given to his opinion. The ALJ adequately explained the weight he gave to Dr. Todd's opinion, and Brown has not shown the ALJ's evaluation was erroneous.

### 5. Drs. Loeser and Sandell

The ALJ gave the opinions provided by consultative and examining physician, Dr. Loeser, and state agency reviewing physician, Dr. Sandell, great weight. In doing so, however, he explained that the most weight was given to Dr. Todd's opinion because he had the opportunity to review the entire record. Brown faults the weight given to those opinions because there was substantial evidence added to the record after their opinions were prepared and provided. The ALJ, however, explained that he relied primarily on Dr. Todd. Therefore, any error in the weight given is harmless.

14

### B. Brown's Testimony

Brown also contends that the ALJ erred in evaluating his testimony about his symptoms and limitations. He argues that the ALJ improperly discounted his testimony as not supported by the objective medical evidence in the record. The Commissioner responds by showing that the ALJ considered a variety of factors, not just objective medical evidence, to evaluate Brown's testimony about his symptoms and limitations.

An ALJ is required to consider a claimant's statements about his symptoms, including pain, in determining whether the claimant is disabled. 20 C.F.R. § 404.1529; Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; Coskery, 892 F.3d at 4. "In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the ALJ] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] statements affect [him]." § 404.1529(a); see also § 404.1529(c)(3).

Brown argues that the ALJ improperly discounted his testimony based on the ALJ's statement that the objective medical evidence did not fully support Brown's testimony and that Brown had "failed to establish a correlation between the allegations and the objective medical evidence." AR at 26. In the part of the ALJ's decision that Brown cites, however, the

15

ALJ was analyzing Brown's testimony under SSR 96-7p, which has now been superseded and did not apply to Brown's case. If the ALJ had stopped there and relied only on that analysis, he would have erred.

Instead, the ALJ continued to analyze Brown's testimony under SSR 16-3p, which is the correct regulatory framework.[8] The ALJ went on to consider the medical evidence and Brown's statements to his health care providers from June of 2013 through February 16, 2017, when the ALJ found Brown became disabled. That evidence showed that Brown's activities and medical examination and test results did not support Brown's testimony about the severity of limitations. The ALJ also noted that Brown continued to work while he had the same impairments that were reported after his alleged onset date and that he continued to collect unemployment benefits for six months after his alleged onset date.[9]

---

[8] The ALJ did not explain why he referred to an SSR that had been superseded more than two years before his decision issued.

[9] Application for and receipt of unemployment benefits requires certification of an ability to work and may be a factor that adversely affects the ALJ's assessment of the claimant's testimony about the severity and disabling effects of his symptoms. Praytor v. Commissioner, 750 F. App'x 723, 730 (10th Cir. 2018); Robinson v. Commissioner, 649 F. App'x 799, 802 (11th Cir. 2016); Frisby v. Colvin, 632 F. App'x 226, 227 (5th Cir. 2016); Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014); Whitman v. Colvin, 762 F.3d 701, 708 (8th Cir. 2014); Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005).

C. Residual Functional Capacity

Brown contends that the ALJ erroneously assessed his residual functional capacity because of errors in weighing the medical opinions in the record and in evaluating Brown's testimony.[10] As is explained above, no error occurred. Therefore, substantial evidence supports the ALJ's assessment of Brown's residual functional capacity.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 7) is denied. The Commissioner's motion to affirm (document no. 10) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

March 31, 2020

cc: Counsel of record.

---

[10] A claimant's residual functional capacity is what he or she "can still do despite his or her limitations." Social Security Ruling 96-8p, 1996 WL 374184, at *2 (July 2, 1996). A residual functional capacity assessment is a determination of the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The claimant is responsible for providing the evidence that the ALJ uses to make the residual functional capacity assessment. § 404.1545(a)(3).

17